1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   KEVIN J. BUTLER (Cal. Bar No. 329129)
4  Assistant United States Attorney
   Violent & Organized Crime Section
5       1300 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-6495
7       Facsimile: (213) 894-0141
        E-mail:   kevin.butler2@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          No. CR 21-00101-CJC

13            Plaintiff,               GOVERNMENT'S AMENDED SENTENCING
                                       POSITION FOR DEFENDANT JULIO CESAR
14            v.                       MARTINEZ

15  JULIO CESAR MARTINEZ,
                                       Hearing Date:  December 18, 2023
16            Defendant.

17

18

19        Plaintiff United States of America, by and through its counsel

20  of record, the United States Attorney for the Central District of

21  California and Assistant United States Attorney Kevin J. Butler,

22  hereby files its Amended sentencing position.

23  ///

24  ///

25  ///

26

27

28

This amended sentencing position is based upon the attached memorandum of points and authorities, the Presentence Investigation Report, the plea agreement, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 4, 2023                    Respectfully submitted,

                                           E. MARTIN ESTRADA
                                           United States Attorney

                                           MACK E. JENKINS
                                           Assistant United States Attorney
                                           Chief, Criminal Division


                                                /s/
                                           _____
                                           KEVIN J. BUTLER
                                           Assistant United States Attorney

                                           Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA

ii

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3      Defendant Julio Cesar Martinez ("defendant") was the decades

4 long head of a deadly heroin importation and distribution ring that

5 delivered countless doses of heroin to thousands throughout Orange

6 County and Southern California.  In return, he and his family

7 laundered millions in proceeds and lived lavishly, built solely on

8 the back of addicts -- addicted customers who used to their death and

9 addicted deliverers (and co-defendants) who became criminals to

10 support their heroin habits.  In laundering those funds, defendant

11 also turned many of his family members into criminals themselves.

12 And at least one identifiable death was associated with defendant's

13 distribution center.

14      In the final calculus, there is no dispute: defendant's conduct

15 directly lead to the death of at least one person, C.Y.; defendant's

16 conduct directly victimized <u>countless</u> others as part of an epidemic

17 plaguing our district and country; and in return, defendant became

18 fabulously wealthy, sought to hide that money from the world, and

19 utilized nearly every family member he could -- turning them each

20 into criminals -- so that they could spend the proceeds of their

21 villainous ring.  Many of those family members have been sentenced by

22 this Court.  Others faced financial ruin and criminal exposure.

23 Other still face deportation.

24      For those reasons, and those set forth below, the government

25 recommends a sentence of 360 months' imprisonment, which is the low

26 end of the guideline range set by the United States Sentencing

27 Guidelines (the "Guidelines" or "USSG"), with a five-year period of

28 supervised release to follow.

## II.   STATEMENT OF FACTS

Defendant admitted all the necessary facts to apply the enhancements set forth in the PSR and to justify the lengthy sentence recommended by the government and probation in this case in his plea agreement:

From, at least 2003 to July 2021, Defendant -- along with his brother, co-conspirator Victor Martinez -- were the owner/operator/boss of a drug trafficking organization that imported heroin from Mexico to Orange County.  Once the heroin was in Orange County, defendant oversaw the distribution of heroin to various call centers that he also supervised.  As a leader of the organization, defendant supervised and directed more than five other criminal participants.  As part of his distribution activities, defendant, Victor Romero Jr., and defendant's other co-conspirators obtained heroin from a source of supply in Mexico, Roberto Romero Sanchez. Defendant and his co-conspirators negotiated the price and quantity of heroin and facilitated its importation into the United States. Generally, the heroin was delivered to Victor Romero Jr. who then provided it to defendant.

Once defendant received the heroin in Orange County, defendant oversaw the distribution of heroin to customers.  Specifically, defendant distributed the heroin through a call center that defendant operated and directed others to operate.  Defendant largely oversaw a call center, which was managed by co-conspirator Maricela Guerrero, and others, and received heroin orders from customers on a daily basis.  After a customer placed a heroin order, defendant and his co-conspirators arranged for the delivery of the heroin to the customer using "runners."  Defendant and his co-conspirators directed the

2

"runners" to deliver the heroin and collect payment from the customers.  The individuals that defendant directed, including Guerrero, reported to him the amounts distributed and the money collected.

During the course of the distribution operation, defendant was intercepted in telephone calls using coded language to engage in distribution activity.

For example, on June 30, 2017, defendant (using TT#2) called co-conspirator Marla Portillo Cordova and discussed hiring her to run one of the call centers and an arrangement where defendant would provide Cordova "food" -- the organization's code word for heroin -- and Cordova would answer phones at the call center for $1500 a week. Cordova agreed.  [TT#2 call #4371].

On December 5, 2017, Guerrero (using TT#3) called defendant (using TT#12) and told defendant that she was getting busy and expecting certain customers in four and ten minutes.  Guerrero told defendant that, after those transactions, she would have $765, but if she got another for a "taco" -- the organization's code word for a gram of heroin -- it would be $815.  Guerrero stated that she needed to re-up because she was waiting on multiple customers for a "12-pack."  Defendant told Guerrero to get "three more."  Guerrero then asked if she should turn in the "paper" -- the organization's code word for narcotics proceeds -- and defendant told Guerrero to have the street level distributor turn in the paper.  [TT#3 call #6213].

After a street level distributor was arrested by law enforcement on October 17, 2017, defendant directed Guerrero and street level distributors to obtain new telephones to attempt to hide their activities from law enforcement.  [TT#9 call #366].

On August 27, 2017, defendant (using TT#4) made an outgoing call to co-conspirator Victor Romero Jr. (using TT#5) and Romero told defendant that he spoke to his Uncle in Mexico (co-conspirator Roberto Romero Sanchez) and that the "food" (heroin) would not be changing and that it was the same as always.  Romero further explained to defendant that if they obtained 10 it would be $425.  Defendant told Romero that he did not have the Uncle's numbers and Romero said he would provide it.  [TT#4 call #466].  That same day, on TT#4 and TT#5, Romero provided the Mexican phone number.

On September 2, 2017, defendant called co-conspirator Victor Romero Jr. (using TT#5) and asked how much they had.  Romero said 1930 and defendant asked if his female cousin (co-conspirator Maricela Guerrero) told Romero about the quality of the "food."  Romero said he would let his Uncle know.  [TT#5 call #1455].

On August 17, 2017, defendant (using TT#4) made an outgoing call to co-conspirator Francisco Serrano and asked if he got $1,305 of narcotics proceeds from the other heroin distribution store.  Serrano confirmed that he had. [TT#5 call 155].

On August 26, 2017, defendant Maricela Guerrero (using TT#3), called defendant (using TT#4) and asked whether defendant would be sending defendant Angel Cervantes to pick up the money.  Eventually, the two decided to send Serrano with $2,500 because they had just sold an "enchilada" -- the organization's code word for an ounce of heroin. [TT#4 call 855].  Defendant discussed narcotics proceeds on wires on at least August 26, October 15, October 20, October 21, December 6, December 7, 2017.

On December 6, 2017, after being intercepted discussing narcotics proceeds, defendant (while under surveillance) met with co-

4

conspirator Angel Cervantes in Santa Ana.  Defendant was then stopped by law enforcement for a vehicle violation, a K-9 alerted to the car, and then to the center console, which contained an envelope with $1,690 inside.  Defendant also had $900 in cash in his left pocket.  During the stop, before the search, defendant took the battery out of his phone and swallowed the SIM card to hide the drug trafficking organization's activities from law enforcement.  Defendant also believed that law enforcement may have planted a microphone inside his car.  [TT#3 call #6253 and 6254].

On December 19 and 22, 2016, at defendant Maricela Guerrero's direction, defendant Hunter Sanders -- both of whom worked for defendant's drug distribution network and call center -- delivered heroin to victim C.Y.  On December 23, C.Y. died of acute polydrug intoxication, including heroin.

Throughout the time defendant distributed heroin, defendant laundered his criminal proceeds through various means in an effort to conceal the nature and source of the criminal proceeds.  For example, defendant directed co-conspirators and others to transfer narcotics proceeds into their own personal bank accounts, largely in structured deposits to avoid law enforcement scrutiny.  Defendant then used the laundered proceeds to fund his lifestyle and interests, including but not limited to the cars and homes set forth in the forfeiture section (paragraph 3(a)) of the plea agreement.  The items described in paragraph 3(a) were obtained through defendant's narcotics trafficking activities and/or used during defendant's distribution of narcotics.

Through his conduct, defendant distributed and caused the distribution of at least 29 kilograms, which amounted to thousands of

doses of heroin, onto the streets of Orange County.  All of the heroin distributed was foreseeable to him.  Defendant knew that the substance that he distributed was heroin.

**III.  THE PRESENTENCE REPORT**

On November 13, 2023, the United States Probation Office ("USPO") filed a Presentence Report ("PSR").  The USPO calculated defendant's adjusted offense level as 37, pursuant to the following calculation:

| | | |
|---|---|---|
| Base Offense Level: | 34 | U.S.S.G. § 2D1.1 |
| Specific Offense Characteristics: | | |
| Importation of Narcotics: | +2 | U.S.S.G § 2D1.1(b)(16)(C) |
| Leader Organizer: | +4 | U.S.S.G § 3B1.1 |

(See PSR at 4.)  After a three-point downward adjustment for acceptance of responsibility under USSG § 3E1.1(a) and (b), the USPO calculated defendant's total offense level as 37.  (Id.)  The government does not object to the USPO's calculation of defendant's total offense level.  Nor does the government object to the USPO's calculation of defendant's criminal history score and category, which it determined, respectively, to be 13 and VI, as well as a career offender status.  (Id.)  The USPO also recommends a sentence of 360 months' imprisonment.

**IV.  THE GOVERNMENT'S SENTENCING POSITION**

For the reasons set forth below, the government recommends a low end sentence of 360 months' imprisonment.  On one hand, the defendant is pleading guilty and finally accepting responsibility for his decades reign of terror of the weakest members of our society.  In

6

doing so, he saves the government significant resources that would need to be martialed to try the case against the defendant and those resources can be deployed elsewhere to provide a safer community. Similarly, he provides closure for victims of his crimes and saves other members of his family and potential cooperators from having to testify against him.  On the other hand, defendant oversaw the entirety of both the narcotics trafficking and money laundering.  And he benefitted the most from both.  Weighing each, a low end guidelines sentence is appropriate.

### A.    A Low End Sentence of 360 Months' Imprisonment is Sufficient, But Not Greater Than Necessary Under the Section 3553(a) Factors

With a Criminal History Category of VI, and, after applying the reduction for acceptance of responsibility, defendant's Guidelines sentencing range is 360 months' to life imprisonment.  The government recommends that the Court sentence defendant to 360 months' imprisonment, with a five-year period of supervised release, and a $100 special assessment.  Such a sentence is sufficient, but not greater than necessary given the nature and circumstances of the offense, the history and characteristics of the defendant, the need to promote respect for the law and provide just punishment, and to afford adequate deterrence to criminal conduct.

Defendant engaged in some of the most serious conduct that this Court can address.  The distribution of heroin onto the streets of our community is not a victimless crime.  It leads to addiction, destroys the lives of users who may otherwise be productive members of society, impacts families, and not infrequently causes deaths through overdoses.  Defendant was intricately and intimately involved

with the distribution of heroin profits, the coordination of the heroin deliveries, the call center itself, as well as the distribution of an even deadlier drug -- fentanyl.  And of the many defendants this Court has sentenced in this case, none have had the amount of oversight over the entire operation.  Defendant had the connections with Mexico, where the heroin was imported from.  He oversaw the management of the distribution center and hired others to oversee the runners who delivered the drugs.  These runners themselves were all addicts, largely paid in the very heroin they were addicted to and distributing to other addicts.  The Court's sentence must reflect the harm that is caused by defendant's conduct and deter others from engaging in it.

Defendant has, admittedly, taken responsibility for his actions by acknowledging his role in the crime, by pleading guilty, and by truthfully owning up to his conduct.  A sentence at the low end of the Guidelines range associated with his plea acknowledges his acceptance of responsibility, while still acknowledging the seriousness of the crime and defendant's criminal history, the amount of heroin distributed as well as its profits -and defendant's unique position as a leader/organizer.  Such a sentence also takes into account that defendant is not similarly situated to other defendants, except his brother.

Finally, a sentence of 360 months' imprisonment will help promote respect for law enforcement and deter future criminal conduct, including that from would-be defendants, by holding defendant accountable for the crime he committed.  Similarly, a sentence of 360 months will help avoid unwarranted sentence disparities as this defendant is not similarly situated with other

8

defendants in this conspiracy.  The recommended 360 month sentence appropriately reflects the seriousness of the offense, the history and characteristics of the defendant, the need to promote respect for the law and provide just punishment, and the need to provide adequate deterrence.

Indeed, any sentence lower than the decades that defendant distributed heroin and laundered the proceeds would do a disservice and injustice to the countless victims throughout the regions, as well as to defendants own family members and co-defendants who were also ruined by defendant's greed.  This sentence would be commensurate with defendant's role as the head of an organization that preyed on addicts throughout South California.

**III. CONCLUSION**

For the foregoing reasons, a 360 month sentence is sufficient, but not greater than necessary to accomplish the goals set forth in 18 U.S.C. § 3553(a), and the government respectfully requests that the Court impose this sentence.  While the government acknowledges the length of this requested sentence, any sentence for this defendant should reflect the damage he caused and the vast wealth he accumulated in its wake.